1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

ROGELIO PEREZ,

                         Plaintiff,

    v.

DR. ROMEO ARANAS, *et al.*,

                      Defendants.

Case No. 3:18-CV-0379-MMD-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]**

[ECF No. 24]

10       This case involves a civil rights action filed by Plaintiff Rogelio Perez ("Perez")

11 against Defendants Romeo Aranas ("Aranas"), Karen Gedney ("Gedney"), James

12 Dzurenda ("Dzurenda"), and Brian Williams ("Williams") (collectively referred to as

13 "Defendants"). Currently pending before the Court is Defendants' motion for summary

14 judgment. (ECF No. 24.)[2] Perez opposed the motion, (ECF No. 31), and Defendants

15 replied. (ECF No. 33). For the reasons stated below, the Court recommends that

16 Defendants' motion for summary judgment, (ECF No. 24), be granted.

17  **I.    PROCEDURAL HISTORY**

18       Perez is an inmate in the custody of the Minnesota Department of Corrections and

19 is currently incarcerated at Minnesota Correctional Facility, St. Cloud. However, the

20 events that give rise to the instant action occurred while Perez was incarcerated by the

21 Nevada Department of Corrections ("NDOC") and housed at both the Northern Nevada

22 Correctional Center ("NNCC") and the Ely State Prison ("ESP"). (ECF No. 5.)

23       Perez filed a complaint pursuant to 42 U.S.C. § 1983. (*Id.*) On October 7, 2019,

24 the Court screened Perez's complaint pursuant to 28 U.S.C. § 1915A. (ECF No. 4.) Perez

25

26

27

28

---

[1]    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]    Defendants also filed exhibits under seal consisting of Perez's medical records. (ECF No. 26.)

1   was permitted to proceed on an Eighth Amendment deliberate indifference to serious

2   medical needs claim against Defendants Aranas, Gedney, Dzurenda, and Williams. (*Id.*)

3         Defendants filed a motion for summary judgment arguing that summary judgment

4   should be granted on the following grounds: (1) Defendants were not deliberately

5   indifferent to Perez's medical needs and Perez was not harmed; (2) Defendants' lack of

6   personal participation; and (3) Defendants are entitled to qualified immunity. (ECF No.

7   24.) Perez opposed the motion, (ECF No. 31), and Defendants replied. (ECF No. 33.)

8   **II.   FACTUAL BACKGROUND**

9         Defendants Aranas, Gedney, Dzurenda, and Williams were employed with the

10   NDOC at the relevant time of Perez's complaint. Aranas was the Medical Director, (ECF

11   No. 24-4), Gedney was a Senior Physician, (ECF No. 24-8), Dzurenda was the Director

12   of the NDOC, (ECF No. 24-6), and Williams was the Warden of High Desert State Prison.[3]

13   (ECF No. 24-5.)

14         Perez suffers from chronic Hepatitis C ("Hep C"). (ECF No. 24-7 at 3.) On February

15   15, 2016, Perez filed an informal grievance indicating he needed to see a doctor because

16   of his Hep C and needed new medication. (ECF No. 24-1 at 3.). Perez was placed on the

17   provider sick call list and was to be seen within two weeks. (*Id.* at 2.) Perez filed a first

18   level grievance on April 13, 2016, regarding the same issue. (*Id.* at 21). The response to

19   the first level grievance stated Perez's blood was tested in August 2016 and his AST to

20   Platelet Ratio Index ("APRI") score was only 0.4, and based on Medical Directive 219, a

21   patient with an APRI score of less than 2.0 is not eligible for direct acting antiviral ("DAA")

22   medications available for Hep C. (*Id.* at 20). On August 25, 2018, Perez filed a second

23   level grievance stating that he stood by his informal and first level grievances on his Hep

24   C treatment and wanted to be treated for Hep C. (*Id.* at 8-10.) The response reiterated

25   that Perez's blood was tested in August 2016 and the results showed an APRI score of

26   0.4, and those with an APRI score of less than 2.0 were not eligible for treatment at that

27   _____

28   [3]   Although Perez alleges Brian Williams was a treating physician in his complaint, Williams was the Warden of the High Desert State Prison at the time.

time. (ECF No. 24-2 at 2.) The response also stated that part of Perez's treatment plan included continuous monitoring for any signs and symptoms of Hep C and yearly blood tests to monitor his liver function. (*Id.*).

According to Perez's medical records, on August 29, 2018, Perez was not exhibiting jaundice or other symptoms related to Hep C. (ECF No. 26-1 at 2 (sealed).) On September 9, 2018, Perez refused his chronic care appointment. (ECF No. 26-3 at 10 (sealed).) Perez also refused medical appointments for other conditions on February 25, 2019, and April 24, 20219. (*Id.* at 9.) Perez had an APRI score of 0.58 on January 11, 2019. (ECF 26-2 at 2 (sealed).)

On May 29, 2020, a "baseline" abdominal ultrasound was approved by the Utilization Review Panel to begin DAA treatment. (ECF No. 26-4 at 2 (sealed).) Perez twice refused medical transportation for the procedure. (*Id.* at 3, 4). Therefore, it was not possible to start Perez's treatment because he refused to complete the required testing at that time. However, based upon his APRI scores and the consent decree filed in this Court in Case Number 3:19-cv-00577-MMD-CLB, Dr. Naughton again prescribed the DAA treatment for Perez on December 15, 2020. (ECF Nos. 26-5 at 2 (sealed); 24-7 at 4). Perez had an ultrasound on January 11, 2021. (ECF No. 26-6 at 2 (sealed).) The results showed Perez's liver had a normal appearance, with no visible mass, and no damage. (ECF Nos. 26-6 at 2 (sealed); 24-7 at 4.) Perez received the DAA treatment beginning in early 2021. (ECF No. 26-5 (sealed); 24-7 at 4.)

## III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material.

*Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary

1  materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477

2  U.S. at 322-23.

3      Where the moving party has met its burden, however, the burden shifts to the

4  nonmoving party to establish that a genuine issue of material fact actually exists.

5  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The

6  nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*

7  *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation

8  omitted). In other words, the nonmoving party may not simply rely upon the allegations or

9  denials of its pleadings; rather, they must tender evidence of specific facts in the form of

10  affidavits, and/or admissible discovery material in support of its contention that such a

11  dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is

12  "not a light one," and requires the nonmoving party to "show more than the mere existence

13  of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387

14  (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury

15  could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping*

16  *Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions

17  and "metaphysical doubt as to the material facts" will not defeat a properly supported and

18  meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

19  475 U.S. 574, 586–87 (1986).

20      When a *pro se* litigant opposes summary judgment, his or her contentions in

21  motions and pleadings may be considered as evidence to meet the non-party's burden to

22  the extent: (1) contents of the document are based on personal knowledge, (2) they set

23  forth facts that would be admissible into evidence, and (3) the litigant attested under

24  penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923

25  (9th Cir. 2004).

26      Upon the parties meeting their respective burdens for the motion for summary

27  judgment, the court determines whether reasonable minds could differ when interpreting

28  the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City*

*of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV.    DISCUSSION

### A.    Eighth Amendment – Deliberate Indifference to Serious Medical Needs

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency" by prohibiting the imposition of cruel and unusual punishment by state actors. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal quotation omitted). The Amendment's proscription against the "unnecessary and wanton infliction of pain" encompasses deliberate indifference by state officials to the medical needs of prisoners. *Id.* at 104 (internal quotation omitted). It is thus well established that "deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Id.* at 105.

Courts in the Ninth Circuit employ a two-part test when analyzing deliberate indifference claims. The plaintiff must satisfy "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (internal quotation omitted). First, the objective component examines whether the plaintiff has a "serious medical need," such that the state's failure to provide treatment could result in further injury or cause unnecessary and wanton infliction of pain. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell*, 763 F.3d at 1066 (internal quotation omitted).

Second, the subjective element considers the defendant's state of mind, the extent of care provided, and whether the plaintiff was harmed. "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." *Hallett v. Morgan,* 296 F.3d 732, 744 (9th Cir. 2002) (internal quotation omitted). However, a prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1050, 1057 (9th Cir. 2004). The defendant prison official must therefore have actual knowledge from which he or she can infer that a substantial risk of harm exists, and also make that inference. *Colwell*, 763 F.3d at 1066. An accidental or inadvertent failure to provide adequate care is not enough to impose liability. *Estelle*, 429 U.S. at 105–06. Rather, the standard lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other. . ." *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). Accordingly, the defendants' conduct must consist of "more than ordinary lack of due care." *Id.* at 835 (internal quotation omitted).

Moreover, the medical care due to prisoners is not limitless. "[S]ociety does not expect that prisoners will have unqualified access to health care…." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Accordingly, prison officials are not deliberately indifferent simply because they selected or prescribed a course of treatment different than the one the inmate requests or prefers. *Toguchi*, 391 F.3d at 1058. Only where the prison officials' "'chosen course of treatment was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to the prisoner's health,'" will the treatment decision be found unconstitutionally infirm. *Id.* (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)). In addition, it is only where those infirm treatment decisions result in harm to the plaintiff—though the harm need not be substantial—that Eighth Amendment liability arises. *Jett*, 439 F.3d at 1096.

### 1.    Analysis

Starting with the objective element, Defendants do not dispute that Perez's Hep C constitutes a "serious medical need." Rather, Defendants argue that summary judgment

should be granted because Perez cannot establish the second, subjective element of his claim. Specifically, Defendants argue they were not deliberately indifferent to Perez's condition. Under the subjective element, there must be some evidence to create an issue of fact as to whether the prison official being sued knew of, and deliberately disregarded the risk to Perez's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Moreover, this requires Perez to "demonstrate that the defendants' actions were both an actual and proximate cause of [his] injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098- 1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants submitted authenticated evidence regarding the medical treatment Perez received related to his Hep C. (*See* ECF Nos. 26-1, 26-2, 26-3, 26-4, 26-5, 26-6 (sealed).) According to Defendants' evidence, Perez spoke with a NDOC healthcare provider about his Hep C and/or received blood work and testing on at least twelve separate occasions during the time at issue in the complaint.[4] (*See* ECF Nos. 26-1, 26-2 (sealed).) Specifically, Defendants' evidence shows that Perez was already enrolled in the chronic specialty clinic for Hep C by not later than July of 2016.[5] (ECF No.

---

[4]     Defendants have produced authenticated progress notes and lab reports indicating, within the legible portions, that someone at the NDOC had spoken to Perez and had monitored Perez's Hep C through blood testing on: January 26, 2016, March 1, 2016, June 7, 2016, July 19, 2016, July 22, 2016, August 17, 2016, March 8, 2017, April 25, 2018, May 7, 2018, August 29, 2018, and January 11, 2019. (ECF Nos. 26-1, 26-2 (sealed).) There is no indication of who wrote the progress notes, i.e., a nurse, physician, or some other healthcare provider. (ECF No. 26-1 (sealed).)

[5]     While it is unclear exactly when Perez began receiving care in the chronic specialty clinic for his Hep C, the response to his first level grievance on September 7, 2016, states: "You are enrolled in the chronic specialty clinic for Hep. C. Part of your treatment plan includes continuous monitoring for any signs and symptoms of Hep C and regular 6 months blood testing of your liver function." (ECF No. 24-2 at 5.) The response to the second level grievance on November 18, 2016, also states: "You are enrolled in the chronic speciality (sic) clinic for Hep C. Part of your treatment plan includes continuous monitoring for any signs and symptoms of Hep C and yearly blood tests to monitor your liver function." (*Id.* at 2.) Further, a chronic disease clinic enrollment form included in the record is dated July 22, 2016. (ECF No. 26-1 at 5 (sealed).)

26-1 at 5 (sealed).) In August 2016, Perez had lab work completed and his APRI score was 0.4. (ECF No. 24-1 at 20.) On January 11, 2019, Perez again had lab work completed and his APRI score was 0.58. (ECF No. 26-2 at 2 (sealed).)

On May 27, 2020, Dr. Naughton requested that Perez receive a "baseline abdominal" ultrasound based on his approval for the chronic clinic HCV treatment protocol. (ECF No. 26-4 at 2 (sealed).) On July 28, 2020, Perez refused transport for the ultrasound. (*Id.* at 3.) On August 6, 2020, Perez again refused transport. (*Id.* at 4.) On December 15, 2020, Dr. Naughton again prescribed Perez treatment for his Hep C. (ECF No. 26-5 at 2 (sealed).) Prior to starting his treatment, on January 11, 2021, an ultrasound was performed on Perez, which showed "normal sonographic appearance of the liver. No liver mass is visible." (ECF No. 26-6 at 2 (sealed).)

During the time relevant to the complaint, Perez was not provided Hep C drug intervention because Perez's APRI score and lack of symptoms did not qualify him for treatment under the NDOC policies at the time. (ECF Nos. 24-3, 24-7, 24-8.) Additionally, Defendants provided a declaration from current NDOC Medical Director, Dr. Michael Minev, stating, "Mr. Perez did not exhibit any symptoms of decreased liver function, namely: spider angiomata; 2) palmar erythema; 3) gynecomastia; 4) ascites; or 5) jaundice." (ECF 24-7 at 4.) Further, Dr. Minev stated: "Mr. Perez did not require drug intervention to treat his Hepatitis-C at the time of his complaint due to his scores and lack of symptoms." (*Id.*)

Defendants have submitted evidence that establishes Defendants affirmatively monitored Perez's Hep C and Defendants have met their initial burden on summary judgment by showing the absence of a genuine issue of material fact as to the deliberate indifference claim. *See Celotex Corp.*, 477 U.S. at 325. The burden now shifts to Perez to produce evidence that demonstrates an issue of fact exists as to whether Defendants were deliberately indifferent to his medical needs. *Nissan*, 210 F.3d at 1102.

In Perez's response to the motion for summary judgment, Perez states that he has been moved to Minnesota and "due to orientation and COVID regulations and protocols

[he] has no access to the law library or legal materials" and further asserts that "this situation is temporary and [he] should be able to have his arguments and supporting documentation ready by the time trial is set." (ECF No. 31 at 3.) Perez also states, with no supporting evidence, that his APRI score was worse in November 2020, which demonstrates "a deteriorating condition" and Defendants did not follow policy by testing yearly, with no tests completed in 2017. (*Id.* at 2.)

Despite Perez's contention that he did not receive annual testing pursuant to NDOC policy, the authenticated evidence shows Perez received lab work—at least annually—on August 13, 2015, January 26, 2016, March 1, 2016, June 7, 2016, July 19, 2016, August 17, 2016, March 8, 2017, May 7, 2018, and January 11, 2019. (ECF No. 26-2 (sealed).) Medical progress notes and lab results show Perez was being consistently monitored and his APRI scores were not high enough to warrant treatment. To the extent Perez argues the treatment he received was unacceptable based on an increasing APRI score, a difference of opinion between an inmate and prison medical authorities regarding treatment does not give rise to a § 1983 claim. *See Franklin*, 662 F.2d at 1344.

Finally, while the Court is sympathetic to Perez's *pro se* status and claim that he does not have access to the law library in Minnesota, the Court already *sua sponte* gave Perez an extension of time to file his opposition. (ECF No. 29.) Additionally, based on the authenticated evidence before the Court which include Perez's medical records, and as discussed above, it does not appear that Perez could present evidence to create any issue of fact at this stage.

Therefore, Perez has failed to meet his burden on summary judgment to establish that prison officials were deliberately indifferent to his medical needs as he failed to come forward with any evidence to create an issue of fact as to whether Defendants deliberately denied, delayed, or intentionally interfered with the treatment plan. *See Hallett*, 296 F.3d at 744. Moreover, to the extent that Perez's assertions in this case are based upon his disagreement with Defendants' choice of treatment, this does not amount to deliberate indifference. *See Toguchi*, 391 F.3d at 1058. In cases where the inmate and prison staff

simply disagree about the course of treatment, only where it is medically unacceptable can the plaintiff prevail. *Id.* Therefore, Perez has failed to show that the NDOC's "chosen course of treatment was medically unacceptable under the circumstances." *Id.* Accordingly, Perez fails to meet his burden to show an issue of fact that Defendants were deliberately indifferent to his needs because Perez has only shown that he disagrees between alternative courses of treatment, such as being given drug intervention treatment as opposed to having his Hep C monitored for progression.

Accordingly, the Court recommends Defendants' motion for summary judgment be granted.[6]

## V.     CONCLUSION

For good cause appearing and for the reasons stated above, the Court recommends that Defendant's motion for summary judgment, (ECF No. 24), be granted.

The parties are advised:

1.      Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.      This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

///

///

///

///

---

[6]     The Court does not address Defendants' personal participation or qualified immunity arguments because the Court finds that Perez's constitutional claim fails on the merits.

## VI.     RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendant's motion for summary judgment, (ECF No. 24), be **GRANTED.**

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court **ENTER JUDGMENT** and **CLOSE THIS CASE**.

**DATED**: ___December 20, 2021___.

_____

**UNITED STATES MAGISTRATE JUDGE**